IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Fred Muir, | Case No. 3:07 CV 261 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Chrysler LLC, | |
| Defendant. | |

### INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 32), Plaintiff's Opposition (Doc. No. 36) and Defendant's Reply (Doc. No. 38).

Plaintiff Fred Muir filed this lawsuit against his former employer, Defendant Chrysler LLC (Chrysler), alleging violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), and Ohio Revised Code § 4112.99. He also asserts claims for intentional infliction of emotional distress and punitive damages. This Court has jurisdiction over the Title VII claim under 28 U.S.C. § 1331 because that claim arises under federal law. This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a).

### BACKGROUND

Plaintiff began working for Defendant in 1975 and at the relevant times worked at the Toledo North Assembly Plant (Plant). Plaintiff belonged to the United Auto Workers union (UAW) and was elected steward around 1996-97 and then chief steward in July 2001, a position he held during the times relevant to this lawsuit. As chief steward, Plaintiff handled complaints from UAW members.

Hector Garcia, an hourly employee at the Plant, approached Plaintiff in October 2004 regarding an alleged incident of sexual harassment in the UAW office. Garcia alleged Mark Epley, a union official, made inappropriate comments to a female hourly employee. Garcia, who had previously reported the incident to UAW officials, asked Plaintiff to provide the mailing addresses of Chrysler management and UAW leadership so he could send a letter describing the incident. Garcia apparently had contacted an investigator with the Equal Employment Opportunity Commission (EEOC) who recommended putting the complaint in writing. Plaintiff provided various office addresses for Chrysler and UAW officials as well as home addresses for UAW leadership.[1]

Thomas Maxon, Senior Manager of Human Resources at the Plant, initiated an investigation into the incident when he learned of Garcia's letter. Maxon, along with Labor Relations Supervisor Jean Hathaway, UAW Local 12 Chairman Daniel Henneman, and UAW Committeeman Daryl Peterson, all met with the female employee in November 2004. The employee denied any inappropriate conduct by Epley. This group also met with Garcia and Plaintiff in the afternoon of Friday, November 5 and determined in the course of its questioning that the gender discrimination complaint was unsupported. They also questioned Garcia about how he obtained the home addresses of UAW leadership, and Garcia eventually informed Maxon that Plaintiff provided the list of addresses. Maxon then questioned Plaintiff about his source for the addresses, but Plaintiff did not divulge it during the interview. Plaintiff now states he obtained the addresses through public information and a Christmas card list.

---

[1] Garcia filed a Title VII action against Chrysler in this District (Case No. 3:07-CV-221). The Court granted summary judgment on Garcia's discrimination and retaliation claims and dismissed the action.

The parties dispute whether Maxon raised concerns about previous incidents of identity theft at the Plant. There is no dispute, however, that Maxon was concerned about the sharing of unlisted home addresses, and he placed Plaintiff on notice of possible discipline for refusing to disclose where he obtained addresses. That same day, Friday, Plaintiff was told by UAW officials Henneman and Peterson to leave work for the day and check back with Henneman about returning to work after the weekend. The parties dispute whether Henneman told Plaintiff he was being placed on suspension by Defendant, as Defendant claims it authorized no disciplinary action against Plaintiff.

The parties also disagree on when Plaintiff returned to work. Plaintiff asserts he returned to work after five days of unpaid suspension; Defendant produces timekeeping records and affidavits to support its assertion that Plaintiff received no disciplinary action and missed just over one day of scheduled work for non-disciplinary reasons. Plaintiff testifies he did not return to work until he cleared it through the UAW.

Plaintiff filed an administrative complaint with the EEOC and an internal grievance relating to this unpaid period, with results pending. In 2005, Plaintiff also filed a complaint with the EEOC relating to the incident, alleging unlawful retaliation for exercise of protected rights. The EEOC issued a right-to-sue letter in 2006 with a determination of "reasonable cause" to support a violation of Title VII. Plaintiff filed this lawsuit in 2007.

**I.** ***Prima Facie* Case for Retaliation**

To establish a *prima facie* case of unlawful retaliation under 42 U.S.C. 2000e-3(a),[2] Plaintiff must show: "(1) [he] engaged in activity protected under Title VII; (2) the defendant knew that [he] engaged in protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724,736 (6th Cir. 2006).[3]

The EEOC right-to-sue letter (Opp. Memo. Ex. B) contains a finding of "reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge." The letter does not provide detail on what Plaintiff reported in the charge or what warranted "reasonable cause." Plaintiff argues this letter is sufficient to establish his *prima facie* case of unlawful retaliation.

*Kesselring v. United Techs. Corps.*, 753 F. Supp. 1359, 1368-69 (S.D. Ohio 1991) held that a court may admit in evidence an administrative finding:

---

[2] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

[3] Plaintiff also asserts two claims for unlawful retaliation under Ohio law. The Court considers these claims in conjunction with the federal Title VII claim because Ohio courts look to federal law in this area when adjudicating such claims under Ohio law. *See City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573 (1998) ("We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").

4

> The Supreme Court in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) noted that prior administrative findings may be admitted as evidence under Fed.R.Evid. 803(8)(c) in Title VII cases. *See also, Harden v. Dayton Human Rehabilitation Center*, 520 F.Supp. 769 (S.D.Ohio 1981). The admissibility of agency reports or findings is a matter within the discretion of the court. *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir.1984). The existence or non-existence of discrimination still depends upon the facts of a particular case, not upon an agency's conclusions regarding those facts. *Harden*, 520 F.Supp. at 773.

The factual record before the Court controls its adjudication of the merits, not the conclusory finding contained in the EEOC letter. Furthermore, the Sixth Circuit has found such letters to hold limited probative value. *See Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) (holding trial court did not abuse discretion in excluding EEOC determination letter from evidence in trial because of limited probative value and risk of jury confusion or undue prejudice). Without any record of the EEOC's analysis or the information upon which it relied, its finding alone does not bind or persuade the Court and falls short of creating a genuine issue of material fact.

### 1. Protected Activity

This case is different from the usual Title VII case because Plaintiff did not submit a complaint or personally oppose any employment practice. Rather, he provided a complaining employee the home addresses of officials, which Defendant claims is a violation of company policy and a possible basis to discipline Plaintiff. The Court next considers whether Plaintiff's conduct, independent of Garcia's underlying claim, is protected under Title VII.

First, Plaintiff must establish he engaged in a "protected activity" within the meaning of Title VII. This element may be met by evidence of opposing an unlawful practice or making a charge, testifying, assisting or participating in an investigation, proceeding or hearing. These two provisions have been labeled the "opposition" and "participation" clauses:

5

> We have enumerated the types of activities that constitute opposition under Title VII: complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer-e.g., former employers, union, and co-workers.
>
> * * *
>
> We have held that Title VII [also] protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge.

*Crawford v. Metro. Gov't of Nashville & Davidson County*, 211 F. App'x 373, 376 (6th Cir. 2006), *cert. granted*, 128 S.Ct. 1118 (U.S. Jan. 18, 2008) (No. 06-1595) (internal quotation marks omitted).

Plaintiff argues his conduct is protected under either the opposition or participation clause. Plaintiff claims he is so closely associated with Garcia in this matter that he need not show he was directly involved in the protected activity. Plaintiff points out that Garcia approached him for assistance in submitting a complaint to Chrysler after Garcia had met with an EEOC investigator for guidance. Plaintiff argues his "actions in providing mailing addresses to Garcia for [the] specific purpose of submitting a written complaint regarding an incident of sexual harassment, with full knowledge of Garcia's intent, constitutes participation in objecting to discriminatory or harassing employment practices" (Opp. at p. 12).

Plaintiff cites no conduct he personally undertook in opposition to unlawful employment practices. Sharing a list of union and company official addresses does not meet the standard of "active, consistent 'opposing' activities." *Bell v. Safety Grooving & Grinding, LP*, 107 F. App'x 607, 610 (6th Cir. 2004). Such disclosure of personal information is analogous to copying personal files, *Watkins v. Ford Motor Co.*, No. C-1-03-033, 2005 WL 3448036, at *7 (S.D. Ohio 2005), or obtaining confidential information by rummaging through a supervisor's desk, *O'Day v. McDonnell Douglas*

6

*Helicopter Co.*, 79 F.3d 756, 763-64 (9th Cir. 1996). Both situations were found not to qualify as protected activity because of the inherent breach of trust committed by the employee. Plaintiff here similarly shared private information without permission. And, unlike *Thompson v. N. Am. Stainless, LP*, 520 F.3d 644 (6th Cir. 2008), Plaintiff was not the target of "third-party retaliation" arising from Garcia's "opposing" conduct.

The *Thompson* court faced the following issue: "[D]oes Title VII prohibit employers from taking retaliatory action against employees not directly involved in protected activity, but who are so closely related to or associated with those who are directly involved, that it is clear that the protected activity motivated the employer's action?" *Id.* at 646. In that case, defendant employer terminated plaintiff, a male employee, after his fiancée, who also worked for defendant, filed a gender discrimination charge with the EEOC. In finding such a "closely related . . . or associated" person could bring a claim for unlawful retaliation, the court looked to the purpose of the statute:

> [A] literal reading of section 704(a) suggests a prohibition on employer retaliation only when it is directed to the individual who conducted the protected activity. Such a reading, however, 'defeats the plain purpose' of Title VII. There is no doubt that an employer's retaliation against a family member after an employee files an EEOC charge would, under [*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)] dissuade 'reasonable workers' from such an action.

*Id.* at 647.

*Thompson* extended Title VII beyond its literal coverage because of the clear motive for retaliation against someone as closely related as a fiancée. The court sought to avoid "permitting employers to retaliate with impunity for opposition to unlawful practices, filing EEOC charges or otherwise participating in such efforts, as long as that retaliation is only directed at family members and friends, and not the individual conducting the protected activity." *Id.* at 650. Thus, *Thompson* allows a cause of action for those closely related to the person who engages in protected activity, but

7

not for those who merely support the protected activity. *Thompson* does not expand coverage to co-workers who happen to provide minor support or assistance to the complaining employee.

Alternatively, Plaintiff argues his assistance in providing the list of addresses constituted "participation" in Garcia's charge against Chrysler. Plaintiff cites *Smith v. Columbus Metro. Hous. Auth.*, 443 F. Supp. 61 (S.D. Ohio 1977) to support his argument that his conduct fell under the participation clause. In *Smith*, defendant employer demoted plaintiff employee after she refused to sign an affidavit prepared by defendant regarding an alleged discriminatory act. The court held this refusal constituted participation in a pending proceeding under Title VII and was thus protected activity. *Id.* at 64.

Here, Plaintiff provided the list of addresses to Garcia to assist in sending his complaint to union and company officials before filing a charge with the EEOC. The Sixth Circuit recently reiterated its earlier ruling that such participation in internal investigations **before** an EEOC charge is instituted is insufficient to meet the definition of protected activity:

> [T]he purpose of Title VII's participation clause "is to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged. Accordingly, any activity by the employee prior to the instigation of statutory proceedings is to be considered pursuant to the opposition clause." *Booker v. Brown and Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir.1989). The impact of Title VII on an employer can be onerous. By protecting only participation in investigations that occur relative to EEOC proceedings, the participation clause prevents the burden of Title VII from falling on an employer who proactively chooses to launch an internal investigation.

*Crawford*, 211 F. App'x at 377.

Even if assistance in such internal investigations were protected under the participation clause, providing a list of addresses to allow Garcia to send letters of complaint is too slender a basis for "participation." Plaintiff did not engage in conduct protected by either the opposition or participation

8

clauses of the statute, and he is not so closely associated with Garcia that his failure to do so may be excused. Plaintiff fails to meet his burden of showing he engaged in protected activity. Nevertheless, because the protected activity element in this case presents a somewhat novel question and may depend, in part, on *Crawford* now pending before the Supreme Court, the Court shall analyze the remaining elements of the claim.

### 2. Defendant's Knowledge of Activity

Even assuming Plaintiff's conduct is protected, he still must show Defendant knew of the activity. Defendant suggests Plaintiff cannot meet this element because he cannot point to any "decision maker" whose knowledge would be relevant to this cause of action. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002); *Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 F. App'x 439, 442-43 (6th Cir. 2005). It is beyond dispute that Chrysler Manager, Maxon, and UAW Chairman, Henneman, knew Plaintiff provided Garcia with the list of addresses. According to Plaintiff, Maxon was indeed the decision maker who imposed a suspension. Defendant disagrees, but that dispute is more appropriately considered under the adverse action element of the claim. Plaintiff has sufficiently established through undisputed evidence that relevant decision makers knew of his conduct at the time of the alleged adverse action.

### 3. Adverse Employment Action

Plaintiff must also show he was subjected to adverse employment action. He may meet his burden with evidence that Defendant "took an adverse, retaliatory action" against him or "he was subjected to severe or pervasive retaliatory harassment by a supervisor." The action must be one that a reasonable employee would find materially adverse, defined as conduct that "might have dissuaded

9

a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67-68 (2006) (internal quotation marks omitted).

The parties dispute whether Chrysler took any action at all, as Chrysler claims the UAW Chairman, if anyone, sent Plaintiff home after the interview in November 2004. Plaintiff claims he knew the UAW had no authority to suspend him from work and believed the suspension was merely delivered through the UAW representatives but issued by Chrysler. In support of this version, Plaintiff largely cites his own deposition testimony (Dep. at 87-93) and affidavit where he states Maxon "put him on notice" of possible disciplinary action and sent him to the UAW office where Henneman informed Plaintiff he was to leave the Plant at Maxon's instruction.

Plaintiff also cites the conflicting testimony of Maxon and Henneman. Maxon testified Henneman suspended Plaintiff (Dep. at 61-62), while Henneman testified he took no such action (Dep. at 29-32). Finally, Plaintiff cites the fact that he received no discipline for missing five days of work after his alleged suspension and further points to Maxon's testimony that "if we did [suspend an employee], we certainly wouldn't charge someone if we told them to stay home" (Dep. at 84). Plaintiff argues this evidence is sufficient to present a triable issue that Defendant disciplined Plaintiff for providing the list of addresses to Garcia.

Defendant attacks this evidence on two fronts. First, Defendant produces timekeeping records to show Plaintiff was not absent from work from November 5 through November 9, as Plaintiff alleges. Rather, the records (Doc. 38-2, Ex. C) show Plaintiff missed 2.7 hours Friday, November 5 and took a pre-approved day of absence on Monday, November 8. No work was scheduled for Saturday, November 6 and Sunday, November 7. None of the leave time was recorded as

10

disciplinary, and Labor Relations Supervisor Jean Hathaway states no record of discipline appears in Plaintiff's file for that period (Doc. 38-2).

Second, Defendant argues it is the UAW alone that sent Plaintiff home on November 5 and points to Maxon's (Dep. at 61-63) and Henneman's (Dep. at 39) testimony to support this argument. Henneman stated he simply told Plaintiff to go home that afternoon and return to work the following Monday after Henneman inquired into the situation further with Maxon. He also testified he heard nothing about a company-imposed suspension. Likewise, Maxon testified Henneman reported to him he sent Plaintiff home. However, Maxon testified Henneman told him he was suspending Plaintiff in order to conduct a union investigation into the list of addresses despite Maxon's admonition that only Maxon, not Henneman, could suspend Plaintiff.

On this Record, the Court cannot hold as a matter of law that Plaintiff fails to meet his burden.

First, the internal timekeeping records tend to establish Plaintiff's presence at work on the days indicated. These records show Plaintiff was absent over two hours Friday and eight hours the following Monday. Although the official record marks this absence as non-disciplinary, this evidence is not conclusive, and indeed the testimony indicates **someone**, whether it was Maxon or Henneman, did not want Plaintiff to return to work until Monday at the earliest. Plaintiff's testimony creates a dispute of material fact as to the existence of a compulsory unpaid absence from work. *See EEOC v. Sundance Rehab. Corp.*, 466 F.3d 490, 592 (6th Cir. 2006) (suspension from work may constitute materially adverse action); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2002) (one-week unpaid suspension was sufficient to meet adverse action requirement). Under *Burlington*, this question is suitable for submission to the jury to resolve the conflict in evidence.

11

Second, although Plaintiff's testimony and affidavit may be self-serving, the disagreement between Maxon and Henneman demonstrates a dispute over the circumstances of Plaintiff's departure from the Plant on November 5, 2004. Henneman and Maxon disagree not only on whether Henneman told Plaintiff he was suspended, but also on who had the ability to recall Plaintiff to work after the weekend. Furthermore, Henneman's own testimony is self-contradictory, or at the very least could have created a reasonable belief that Plaintiff was facing adverse employment action: "We didn't really tell him not to come to work. We told him we didn't want him to go to the union meeting on Friday; and my recommendation was go on and go home until the weekend was over and I would see where Tom [Maxon] was on Monday as far as continuing the investigation into the charges" (Dep. at 33-4). Maxon never contacted Plaintiff to tell him the absence from work was UAW's decision (Maxon Dep. at 64). This testimony, coupled with Plaintiff's testimony that he knew the UAW could not suspend an employee (Dep. at 93), warrants a reasonable belief that Plaintiff may have been subjected to some discipline.

In sum, this Record creates a genuine dispute of material fact regarding who, if anyone, suspended Plaintiff and whether Plaintiff held an objectively reasonable belief that he was facing materially adverse employment action. As the Supreme Court observed in *Burlington*, "Context matters." 548 U.S. at 69. In the context of a group interview during which Plaintiff and other individuals were sent out of a supervisor's office and the union representative may have told Plaintiff to go home until the union found out "where things were" with the supervisor, the Court cannot conclude as a matter of law that Plaintiff fails to present sufficient evidence of adverse action.[4]

---

[4] Plaintiff alternatively claims he was harassed in retaliation for his conduct. He points to parking tickets placed on his car and being docked time. Because the Court finds sufficient evidence of adverse action on other grounds, it need not evaluate this alternative basis.

### 4. Causation

The next element in the *prima facie* case is causation. The protected activity and adverse action must be causally connected. In the Sixth Circuit, temporal proximity of fewer than sixth months can support a *prima facie* case with nothing more. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). In the instant case, Plaintiff was asked to leave work the same day his employer learned of his activity. Defendant disputes it actually disciplined Plaintiff, and that Plaintiff's conduct was protected under Title VII, but it cannot deny the close temporal proximity between the events. Plaintiff has established causation.

Therefore, Plaintiff has established three of the four elements of the *prima facie* case. His failure to identify a protected activity means a failure to sustain the claim. Nevertheless, the Court proceeds with the remainder of the analysis as it provides an additional basis for summary judgment.

### II. Legitimate, Non-Discriminatory Reason and Pretext

Even if Plaintiff can establish a *prima facie* case, the inquiry is not complete. Defendant then must articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Defendant meets this burden, Plaintiff then bears the burden of showing that the purportedly legitimate, non-discriminatory reason was merely a pretext for discrimination. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Defendant asserts, without conceding it took disciplinary action against Plaintiff, that its concern about the list of addresses stemmed from previous incidents of identity theft. Maxon stated that disclosure of employees' personal information is prohibited (Maxon Dep. at 69). To meet this burden, Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257. Maintaining employee privacy and protecting against identity theft, whether pursuant to formal policy or not, are each sufficient non-discriminatory reasons. *See Quintanilla v. AK Tube LLC*, 477 F. Supp. 2d 828, 834 (N.D. Ohio 2007) (policy may be legitimate reason even if not in writing).

Because Defendant offers this legitimate, non-discriminatory reason, the burden shifts to Plaintiff to offer evidence that this reason is mere pretext. *Singfield*, 389 F.3d at 563. He may do so by showing the offered reason: (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse employment action. "A plaintiff must do more than simply impugn the legitimacy of the asserted justification . . .; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (1994)).

Plaintiff cites two distinct bases for pretext.

First, he argues the disclosure he made to Garcia was not improper because the home addresses of UAW employees are available through the union election process. Plaintiff may be correct that the addresses were independently available -- though he did not offer this explanation when Maxon first questioned him -- but this argument does not show the proffered reason had no

14

basis in fact, did not provide actual motivation or was insufficient to warrant any discipline. The Record amply demonstrates Maxon focused on Plaintiff's disclosure during the interview on November 5, 2004, deemed it inappropriate and that the disclosure legitimately played in the decision to send Plaintiff home. In the context of Title VII and the *McDonnell Douglas* framework, the public availability of the employee information is simply irrelevant. The decision to discipline need not be correct, but it must be honest and in good faith. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.2d 1106, 1117 (6th Cir. 2001). Defendant's position that it was honestly concerned about the disclosure is supported by past incidents of identity theft at Chrysler, including one reported in *Jacquez v. Herbert*, 447 F. Supp. 2d 858, 861-62 (N.D. Ohio 2006) (Chrysler employee allegedly used company seniority list to obtain and misuse social security numbers for credit card purchases).

Second, Plaintiff claims the discrepancy between Maxon's and Henneman's testimony about the disclosure creates sufficient evidence of pretext to defeat summary judgment. Plaintiff argues the prior incidents of identity theft that purportedly prompted the concern about the list of addresses is not specific or supported, and that Maxon and Henneman never raised the issue when interviewing Plaintiff. Maxon testified he discussed the concern about privacy and identity theft while interviewing Garcia with Plaintiff present in the room (Dep. at 57-58); Henneman testified "I do believe it came up in questioning" but could not say with certainty that it did (Dep. at 24).

This scenario is distinct from that in *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519 (6th Cir. 1997), where the court found that inconsistent explanations of the reason for discharging an employee raised a genuine issue of material fact precluding summary judgment. In that case, the discrepancy in the testimony revealed uncertainty about who made the decision to discharge the employee and whether the basis was conspiring to defraud the company by providing free labor to customers or

15

simply failing to fill out a work order after completing a repair job as the company required. *Id.* at 524.

In the instant case, Henneman and Maxon offer differing accounts of who encouraged or required Plaintiff to go home following the interview on November 5, 2004. However, both Maxon and Henneman agree Plaintiff was questioned and would have been subject to discipline because disclosure of the list of addresses was deemed improper. There is no alternative or competing theory for why Plaintiff would have been subject to discipline, as was true in *Tinker*. The interview of Garcia and Plaintiff clearly focused on the list of addresses rather than the underlying allegations of gender discrimination. Indeed, Plaintiff was "dumbfounded" by the focus on the addresses (Muir Dep. at 59). This testimony refutes any suggestion that the privacy or identity theft concerns are merely post-hoc justifications for Defendant's actions. In similar circumstances, a court found no pretext. *Jordan v. Olsten Corp.*, 111 F. Supp. 2d 227, 238 (W.D.N.Y. 2000) (holding no pretext in firing employee where supervisor believed disclosure of other employees' salaries violated company policy).

The inconsistencies in the testimony do not show the proffered reason lacks factual support or motivation for the decision. The only identified concern was the disclosure of home addresses in questioning and subjecting Plaintiff to possible discipline. *See, e.g.*, *Conley v. U.S. Bank Nat'l Ass'n*, 211 F. App'x 402, 408 (6th Cir. 2006) (inconsistency in testimony insufficient to create genuine issue of material fact where basic reason for termination was consistently expressed).

Plaintiff fails to produce sufficient evidence of pretext. The retaliation claim is dismissed because, even if Plaintiff can establish a *prima facie* case, Plaintiff fails to meets his burden under the *McDonnell Douglas* framework.

### III. Intentional Infliction of Emotional Distress

Plaintiff asserts a separate claim for intentional infliction of emotional distress stemming from the same facts underlying the retaliation claim. However, he does not oppose summary judgment on this ground and is deemed to abandon the claim. A plaintiff may not rest on the pleadings after a defendant has demonstrated an absence of a dispute of material fact, and failing to support such claims renders them abandoned. *Nat'l Solid Wastes Mgmt. Ass'n v. Voinovich*, 959 F.2d 590, 592 (6th Cir. 1992).

### IV. Punitive Damages

Plaintiff claims he is entitled to punitive damages because "Defendant's actions show a conscious disregard for Plaintiff's rights and safety" (Compl. ¶ 60).

Because the Court is granting summary judgment on Plaintiff's substantive claims, punitive damages cannot be awarded. Furthermore, Plaintiff does not meet the standard for punitive damages under 42 U.S.C. 1981a(b)(1): "A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

Plaintiff must meet a three-step test to recover punitive damages:

> First, the plaintiff must show that the individuals perpetrating the discrimination acted with malice or reckless disregard as to whether the plaintiff's federally protected rights were being violated . . .. Second, in order to impute liability to the employer, common law rules of agency apply . . .. Last, even if the plaintiff is successful in proving the first two inquiries, the defendant can nonetheless avoid liability for punitive damages if it can show that it engaged in good faith efforts to comply with Title VII.

*Parker v. Gen. Extrusions, Inc.*, 491 F.3d 596, 602-03 (6th Cir. 2007) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544-46 (1999)).

17

Plaintiff produces no evidence of malice or recklessness with regard to **his own** federally protected rights. He suggests the inability of Garcia to receive attention for his complaint shows recklessness and lack of good faith effort toward remedying unlawful employment practices, but that scenario does not relate to Plaintiff's own claim. Plaintiff simply does not provide specific evidence in support of this claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is granted, and the case is dismissed.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

June 27, 2008